IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DEMETRIUS B. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:19-cv-00956 |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| CLARKSVILLE MONTGOMERY | ) | |
| COUNTY SCHOOL SYSTEM, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 32, "Motion"), supported by an accompanying Memorandum of Law. (Doc. No. 33). Plaintiff filed a response (Doc. No. 36, "Response"), and Defendant filed a reply (Doc. No. 38, "Reply"). For the reasons stated herein, Defendant's Motion will be **DENIED in part** and **GRANTED in part**.

## **BACKGROUND[1]**

Plaintiff was employed by Clarksville Montgomery County School System ("CMCSS" or "Defendant") as a teacher from 1992 until he resigned in 1995. (Doc. No. 37 at 1). Plaintiff was rehired by CMCSS for the 1995-1996 school year and continued his employment with the district over the next few years. (*Id.*). Defendant contends that in early 2000[2], Plaintiff engaged in a

---

[1] Unless otherwise noted, the facts and contentions referred to in this section are taken from Plaintiff's Response to [Defendant's] Statement of Undisputed Material Facts (Doc. No. 37). Facts that are stated herein without qualification are undisputed and treated as such. Alleged facts that are qualified here in some way (as for example by being prefaced with "Plaintiff contends that") are in dispute and are treated as such.

[2] Defendant's statement of undisputed facts actually says the fight occurred in February 1999. (Doc. No. 37 at 1). However, the Disciplinary Records provided by Defendant in support of its Motion show that the altercation occurred on January 26, 2000. (Doc. No. 32-2).

physical fight with another CMCSS teacher on school property in front of students, and that Plaintiff was suspended for a few days as a result. (*Id.*, Doc. No. 32-2).

Plaintiff again resigned from CMCSS in December 2000, at which point he was hired as an elementary school teacher in Michigan for a brief stint. (Doc. No. 37 at 2). At some point, Plaintiff began a position at Fort Campbell Schools, which is a Department of Defense Education Activity ("DoDEA") school.[3] (*Id.*). He was then promoted to Assistant Principal at a DoDEA school in Fort Knox, Kentucky in 2005. (*Id.*).

At some point Plaintiff returned to Fort Campbell schools, where he served as an Assistant Principal in the high school until he resigned in 2016 following a dispute involving his handling of a student issue. (*Id.* at 2-3). Plaintiff pursued an Equal Employment Opportunity claim for race discrimination through the internal DoDEA system that ultimately resulted in a confidential settlement agreement. (*Id.* at 3).

In April 2017, Plaintiff applied[4] to 35 open positions at CMCSS (20 teaching positions and 15 administrative positions). (Doc. No. 33 at 2). Plaintiff was not offered an interview and did not receive a job.[5] (*Id.*, Doc. No. 36 at 4). After this, Plaintiff filed an EEOC claim against CMCSS

---

[3] Again, Defendant's statement of undisputed facts appears to misstate the timeline. Defendant states that Plaintiff was employed at Fort Campbell schools from July 2000 to October 2016. (Doc. No. 37 at 2). This can simply not be the case if (as appears undisputed) Plaintiff worked at CMCSS until December 2000 and then also did a stint at a school in Michigan prior to joining Fort Campbell schools. Additionally, Defendant goes on to state that Plaintiff was promoted to Assistant Principal at a school in Fort Knox, Kentucky in 2005. (*Id.*). That would be impossible if (as Defendant itself contends) Plaintiff remained employed at Fort Campbell until 2016. Counsel for both parties are encouraged to be more careful in future filings to ensure they are not providing inaccurate information to the Court.

[4] It is not clear to the Court whether Plaintiff submitted a single application for 35 positions, or whether he submitted 35 individual applications. Plaintiff uses both application and applications interchangeably throughout his Response to Defendant's Motion. However, Plaintiff uses the singular application in his Complaint, and so the Court will follow suit.

[5] The Court acknowledges that there is a difference between a candidate for a position being *rejected* versus simply *not being hired*. Rejection suggests there was an affirmative decision on the part of the employer in

(Doc. No. 37 at 3-4), which ultimately gave rise to the present action filed on October 28, 2019, whereby Plaintiff brings a claim for race discrimination under Title VII and a claim for retaliation under Title VII. (Doc. No. 1 at 6-7).

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

---

considering, but ultimately not choosing to hire a candidate. But a candidate's application can prove unsuccessful even if it is not rejected in this intentional sense; there is an alternate possibility that the candidate's application is (for whatever reason, including for example the sheer volume of applications) simply not really reviewed prior to the open position being filled by someone else, in which case the application's lack of success is not due to any affirmative decision on the part of the employer with respect to the candidate. Here, however, Defendant notes that they did "not select[] the Plaintiff for employment," that they "refused to hire" him, and that they "pass[ed] over [his] applications." (Doc. No. 33 at 10). This language suggests affirmative action by Defendant and the Court will therefore use the term "rejection" throughout this opinion, as it is consistent with affirmative action by an employer.

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.

Consistent with the above observations made specifically about a defendant-movant seeking summary judgment on a plaintiff's claims, any party asserting that a fact cannot be or genuinely is disputed—i.e., any party seeking summary judgment and any party opposing summary judgment, respectively—can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844,

852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question.[6] *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 2017 WL 57792 at *5 (6th Cir. Jan. 5, 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

The Court will take a moment here to discuss the *McDonnell Douglas* standard and its applicability to motions for summary judgment in the context of employment-discrimination claims. The burden-shifting approach in *McDonnell Douglas* applies only to discrimination or retaliation claims premised on indirect-evidence.[7] *Redlin v. Grosse Pointe Pub. Sch. Sys*., 921 F.3d 599, 606–07 (6th Cir. 2019). The undersigned has recently explained:

---

[6] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

[7] "Direct evidence is such that, if true, requires the conclusion that unlawful retaliation [or discrimination] was a motivating factor without any inferences or presumptions." *Banks v. Bosch Rexroth Corp*., 15 F. Supp. 3d 681, 693 (E.D. Ky. 2014), *aff'd*, 610 F. App'x 519 (6th Cir. 2015) (citing *Norbuta v. Loctite Corp*., 181 F.3d 102 (6th Cir. 1999)). Indirect evidence, accordingly, is evidence that requires the court to make inferences to conclude that retaliation or discrimination was the motivator for an adverse employment action.

When a defendant-movant challenges a plaintiff's ability to reach a jury on an indirect-evidence theory of employment discrimination, there are a number of steps potentially implicated, though not all of them necessarily need be addressed in the analysis. The number of steps to be addressed depends on whether the defendant-movant seeks to prevail at the first step, or at the second and third step, or at both the first step and the second and third step . . .

To prevail at the first step of *McDonnell-Douglas*, the defendant, as the summary-judgment movant, must meet its initial burden of showing an absence of evidence from which a reasonable jury could find the plaintiff established a *prima facie* case. *E.g., Banks v. State of Ohio*, No. 94–3866, 1995 WL 118993, * 2 (6th Cir. Mar. 20, 1995). If the defendant does so, then the burden shifts to the plaintiff to show that at trial it could "make out a *prima facie* case of discrimination by a preponderance of the evidence." *Redlin*, 921 F.3d at 606. If the plaintiff fails to succeed here, then the plaintiff suffers summary judgment in favor of the defendant on the claim. But if the plaintiff succeeds here, defendant does not prevail at the first step and is relegated to try instead to prevail at the second and third steps of *McDonnell-Douglas*.

At the second step, the defendant-movant has the burden (of production only) to show a legitimate and non-discriminatory reason for its action(s). *Brown*, 814 F. App'x at 80 (noting, on the defendant's motion for summary judgment that it is a "burden of production [that potentially] shifts to the defendant to show a legitimate, nondiscriminatory reason for the way it treated the plaintiff"). If the defendant successfully shows evidence of a non-discriminatory reason for its alleged discriminatory act, the court proceeds to the third step, where "the plaintiff must rebut the proffered reason by producing evidence from a which a reasonable jury could conclude that the proffered reason is actually a pretext" for unlawful discrimination. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (quotations omitted).

*Veith v. Tyson Fresh Meat, Inc*., No. 3:19-CV-01065, 2022 WL 891836, at *9-10 (M.D. Tenn. Mar. 25, 2022). As will be further discussed below, Plaintiff's claims are premised (solely) on indirect evidence and thus subject to the *McDonnell Douglas* framework.

## DISCUSSION

Via the Motion and Memorandum in Support, Defendant moves for summary judgment on each of Plaintiff's two claims. The Court will discuss each of them in turn.

## I. Race Discrimination

Title VII of the Civil Rights Act makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleges Defendant discriminated against him on the basis of his race (African American[8]) by not hiring him for any of the positions to which he applied. (Doc. No. 1 at 6-7).

To survive a motion for summary judgment on a Title VII claim for race discrimination, a plaintiff may seek to raise a genuine issue of material fact by offering either direct evidence of discrimination or indirect (i.e., circumstantial) evidence of discrimination in accordance with the familiar *McDonnell Douglas* burden-shifting framework outlined above. Plaintiff here does not argue that he has direct evidence of race discrimination, and the Court did not find any during its review. Therefore, Plaintiff's race discrimination claim will proceed under the indirect-evidence framework of *McDonnell Douglas.* The undersigned has previously explained the *McDonnell Douglas* standard as it applies to race-discrimination claims:

> [I]f only indirect (and no direct) evidence is present, the plaintiff bears the burden under *McDonnell Douglas* of first showing its *prima facie* case of race discrimination, i.e., that:
>
> > 1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.
>
> *Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 502 (6th Cir. 2007) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572–73 (6th Cir.2000)).
>  . . . .

---

[8] Plaintiff's Complaint (Doc. No. 1) refers to Plaintiff as African American. (*Id.* at 6). Plaintiff's Response to Defendant's Motion refers to Plaintiff as being black. (Doc. No. 36 at 1). The Court will use African American as a description of Plaintiff's race in an effort to be consistent with the Complaint.

> If and when the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show some legitimate, non-discriminatory explanation for its action(s). *Edgar v. JAC Prod., Inc*., 443 F.3d 501, 508 (6th Cir. 2006).

*Benitez v. Tyson Fresh Meats, Inc*., No. 3:18-CV-00491, 2022 WL 58399, at *18 (M.D. Tenn. Jan. 5, 2022).

In its Motion, Defendant attempts to prevail at the first step of *McDonnell Douglas* by challenging Plaintiff's ability to establish a *prima facie* case of racial discrimination. Defendant argues that Plaintiff cannot show the fourth element—that CMCSS treated him less favorably than a person outside his protected class. (Doc. No. 33 at 6). Defendant does not otherwise challenge Plaintiff's ability to establish the other three elements. However, as noted above, before Plaintiff is required to show *anything*, Defendant must shift the burden on summary judgment by showing (preliminarily, and subject to Plaintiff's rebuttal) that there is no genuine dispute as to Plaintiff's (in)ability to establish a *prima facie* case. In other words, Defendant must cite evidence or otherwise show that Plaintiff "cannot produce admissible evidence to support" that he was treated less favorably than a similarly situated individual outside his protected class. *See* Fed R. Civ. P. 56(c)(1)(B).

In determining whether Defendant has met its initial burden, the Court finds that none of the evidence presented by Defendant properly addresses the challenged element of an indirect-evidence *prima facie* case of race discrimination. To show that he was treated less favorably than a similarly situated person outside of his protected class, Plaintiff "must 'prove that all of the relevant aspects of his employment situation were nearly identical to those of the [non-minority] employee[ ] who he alleges [was] treated more favorably.'" *Young v. Oakland Cnty.*, 176 F. App'x 644, 649–50 (6th Cir. 2006) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Rather than challenge Plaintiff's ability to show a non-African American

applicant who was similarly situated and who was hired when Plaintiff was not, Defendant points to evidence showing that *some* of the open positions "were filled by minority candidates." (Doc. Nos. 33 at 6, 32-7, 32-8). Defendant also cites evidence that purports to show that "CMCSS has an established process for hiring teachers and instructional administrators that is designed to ensure the most qualified candidate is selected." (Doc. No. 33 at 6). But this approach is a misunderstanding of the fourth element of an indirect-evidence *prima facie* case of race discrimination, which focuses not on the defendant's *process,* but rather on the defendant's *treatment* of the plaintiff (compared to its treatment of persons outside of the plaintiff's protected class). In short, Defendant's sole attack on Plaintiff's indirect-evidence *prima facie* case fails, and Defendant fails to meet its initial burden (as the summary-judgment movant), as to the first step of the *McDonnell Douglas* framework.

Thus, Defendant is relegated to proceeding to the second step. As indicated above, Defendant survives this step, and puts the onus on Plaintiff to prevail at the third step, if (but only if) it shows a legitimate, non-discriminatory reason for not hiring Plaintiff.

In *Benitez*, the undersigned explained:

> Thus, as to the existence of legitimate and non-discriminatory reasons for its action(s), the defendant bears only the burden of production and not the burden of persuasion. *Garren v. CVS Rx Servs., Inc*., 482 F. Supp. 3d 705, 717 (E.D. Tenn. 2020) (citing *Anthony v. BTR Auto. Sealing Sys., Inc*., 339 F.3d 506, 515 (6th Cir. 2003)). To meet that burden of mere production, "the defendant need not persuade the court that it was actually motivated by the proffered reason[s]." *Burdine*, 450 U.S. at 254 (emphasis added). Rather, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* (emphasis added). To raise such genuine issue, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection[, which] must be legally sufficient to justify a judgment for the defendant." *Id.* at 255. "The defendant only has to present [evidence of] 'clear and reasonably specific' reasons that will 'frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.' " *Harris*, 836 F. App'x at 419 (quoting *Burdine*, 450 U.S. at 258).

If the defendant carries its burden to show a legitimate nondiscriminatory reason, then finally the burden shifts back to the plaintiff to show that the reason offered by the defendant is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802-04 (1973)

2022 WL 58399, at *18. Defendant offers a few different non-discriminatory motivations for why it chose not to hire Plaintiff, including: Plaintiff's "past performance as a teacher and coach with CMCSS," Defendant's "longstanding practice of developing and promoting internal talent," and Plaintiff's teaching experience being dated "after [] ten years out of the classroom." (Doc. No. 33 at 7-8).

However, there is an oft-forgotten (or unrecognized) aspect of the second step of *McDonnell Douglas* that can wreak havoc on defendants' positions when it is disregarded. Namely "the defendant must show with evidence what the legitimate, non-discriminatory reason actually was *at the time*" and "not merely what, in retrospect, could or would have been a legitimate, non-discriminatory reason [for its actions]." *Benitez*, 2022 WL 58399, at *56 n. 113. The Supreme Court in *Texas Dep't of Cmty. Affs. v. Burdine* explained that a lower court's concern that a defendant could rely upon post-hoc "fictitious, but legitimate" reasons for its actions was resolved by placing the burden of production upon the defendant to offer "clear and reasonably specific" legitimate reasons for its actions. 450 U.S. 248, 258 (1981) (discussing *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1255 (5th Cir. 1977)). And, as just noted, the reasons offered by the defendant must be shown "through the introduction of *admissible evidence*[.] *Burdine*, 450 U.S. at 255 (emphasis added). Since a defendant is required to show *with introduced evidence* its reasons for the plaintiff's rejection,[9] that necessarily means two things: (i) the reason shown must be the *actual purported reason for the rejection at the time of the decision*, because *that* (and not

---

[9] It bears emphasizing that, as noted above, this requirement is frequently overlooked by courts and parties alike, who often proceed as if it is enough merely to "articulate" a legitimate and non-discriminatory reason.

some post-hoc speculation as to what the reason *surely must have been*) is what would be shown via *admissible evidence*; and (ii) the required showing cannot be made via attorney's statement in briefings as to what the reason was (or surely must have been), because attorney's statements are quintessentially not admissible evidence.

In this case, while Defendant offers up multiple purported legitimate reasons for not hiring Plaintiff, it provides no evidence that those were, as Defendant now claims, actually the purported reasons for Plaintiff's rejection *at the time* the decision was made. The Court affords a defendant all appropriate leeway as to the kinds of admissible evidence that could be used to support a defendant's claim of a legitimate reason for a plaintiff's rejection for a job (or other adverse employment action); for example, an affidavit or deposition testimony from someone with knowledge of the reason(s) for the decision at the time it was made, or historical emails or other documents that include non-hearsay statements indicating what the reason was at the time it was made.[10] But the Court must insist that Defendant support *with admissible* evidence its claim of having had a legitimate reason to reject Plaintiff's application.[11] Defendant's tactic of merely articulating, in its briefing, purported reasons simply will not do. *See Crawford v. W. Elec. Co*.,

---

[10] For reasons the Court need not elaborate on herein, many statements in historical documents that, in one of various ways, tend to show what the purported reason actually was are relatively likely to be admissible despite the rule against hearsay. In particular, the undersigned can imagine various kinds of such statements that likely would properly be deemed offered for a non-hearsay purpose, thus sidestepping the rule against hearsay altogether.

[11] It is worth emphasizing that the Court does not ask at step two whether the purported reason was the actual reason rather than a pretextual reason. The inquiry into pretext does not arise until step three. Instead, what the Court is looking for at step two is evidence that the defendant had at the time in question a *purported* reason (whether genuine or not) that was legitimate and non-discriminatory. If so, the defendant's summary-judgment motion survives to step three, where the plaintiff must carry the burden to show that the purported reason was in fact a pretext. In other words, at step two the Court asks not whether Defendant has shown evidence of the *actual* reason, but rather it has shown evidence of what the *purported* reason actually was (understanding full well that the defendant is virtually certain to claim that the purported reason was the actual reason). And at the risk of repeating itself, the Court notes that a defendant's mere representation in a brief does not constitute evidence of what reason was purported by the defendant at the time in question to be the actual reason.

745 F.2d 1373, 1384 (11th Cir. 1984) ("Such after-the-fact justification is legally insufficient to meet an employer's burden of production under *Burdine*.").

For this reason, the Court holds that Defendant has not met its burden of production to show evidence of a legitimate, non-discriminatory reason for not hiring Plaintiff, and loses at the second step of *McDonnell Douglas*. As Defendant has failed at both the first and second step of *McDonnell Douglas* as to Plaintiff's claim for race discrimination, its Motion will be denied with respect to that claim.

## II. Retaliation

Defendant additionally challenges Plaintiff's claim for retaliation. Title VII makes it unlawful to retaliate against employees for engaging in protected conduct. *See* 42 U.S.C. § 2000e-3(a). A claim for Title VII retaliation can be based on direct evidence or indirect evidence, but as with the race discrimination claim above, Plaintiff has not argued that there is direct evidence he was retaliated against, and the Court did not find any upon its review. For that reason, Plaintiff's retaliation claim will be analyzed solely under the indirect-evidence framework of *McDonnell Douglas.*

The Sixth Circuit has explained:

In order to establish a[n indirect-evidence] prima facie case of retaliation under Title VII, an employee must establish that (1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.

*Niswander v. Cincinnati Ins. Co*., 529 F.3d 714, 720 (6th Cir. 2008). Here, Defendant seeks to prevail at the first step of *McDonnell Douglas* by challenging the fourth element (and only the fourth element) of a *prima facie* case of retaliation in violation of Title VII. Defendant argues that the evidence it cited to show its "legitimate, nondiscriminatory reasons [for rejecting Plaintiff] that

defeat [Plaintiff's] racial discrimination claim also constitute[s]" evidence that Plaintiff cannot establish the causal-connection element of an indirect-evidence *prima facie* case of retaliation. The Court reiterates that the evidence Defendant showed of legitimate, nondiscriminatory reasons to reject Plaintiff was *not* evidence that those reasons *actually were* the purported reasons at the time the decision was made to reject Plaintiff; rather, it was evidence only of circumstances that *could have* constituted legitimate, nondiscriminatory reasons for Plaintiff's rejection.

As noted above, Defendant's asserted non-discriminatory (and non-retaliatory) reasons for not hiring Plaintiff include: 1) Plaintiff's previous altercation with another teacher while employed at CMCSS that Defendant says shows a "concerning lack of professionalism, self-control, and discretion"; 2) CMCSS's practice of hiring internally; and 3) Plaintiff's "dated" teaching experience. (Doc. No. 33 at 7-8). To support the idea that the first reason *could* have existed, Defendant cites to Plaintiff's deposition where he acknowledges his involvement in an altercation at a basketball game and admits that he was suspended for two days as a result. (Doc. No. 32-1 at 17-18, 20). Defendant also cites to a copy of Plaintiff's disciplinary record detailing the incident. (Doc. No. 32-2 at 3). For the second reason, Defendant cites to a list of the teaching positions Plaintiff applied for, which shows a significant portion being filled by internal hires. (Doc. No. 32-8). And for the third reason, although Defendant provides no citations to evidence of this fact, it is undisputed that Plaintiff had not served as a teacher (but rather had served as an Assistant Principal) for approximately the 10 years immediately prior to his application to CMCSS. At the risk of repeating itself, the Court notes that the cited evidence (and the undisputed fact that Plaintiff's teaching experience was "dated") serves to support only the notion that the identified reasons *could have been* the legitimate reason for Plaintiff's rejection, in the sense that the cited evidence offers proof of the circumstances that would have underlay each of the respective reasons

if in fact they *were* the reasons, as Defendant now implies they *could have been*. The cited evidence, however, does not support any notion that the identified reasons actually *were* the purported reasons, *i.e.* were at least purported to be the actual reasons for Plaintiff's non-hire *at the time* of his rejection. And for this reason, the Court has already held above, such evidence is insufficient to sustain Defendant's burden at step two of *McDonnell Douglas*. That is not to say, however, that such evidence is insufficient to sustain Defendant's *initial burden* at step one of *McDonnell Douglas* to preliminarily show Plaintiff's inability to raise a genuine issue as to at least one element of an indirect-evidence *prima facie* case of retaliation—namely, the requirement of a causal connection between the protected conduct and the adverse employment action. It is one thing to say that a defendant cannot meet its burden at step two of *McDonnell Douglas* to show a legitimate reason for an adverse employment action, unless it adduces evidence that such reason was at least purported to be the actual reason. It is quite another to say that a defendant cannot meet its initial burden at step one of *McDonnell Douglas* of indicating preliminarily that the plaintiff cannot raise a genuine issue as to the existence of an element of an indirect-evidence *prima facie* case—here, a causal connection—unless it shows evidence of a legitimate reason that was at least purported to be the actual reason. And the Court declines to say this; as explained below,[12] the Court concludes that a defendant potentially can meet its initial burden even without making such a showing. The question is whether Defendant has met its initial burden here.

---

[12] The Court is well aware that this explanation is contained in one of multiple seemingly hyper-technical discussions herein. But the Court finds them necessary to properly address the nuanced application of summary judgment standards to indirect-evidence theories of employment discrimination and retaliation. *See Benitez v. Tyson Fresh Meats, Inc.*, No. 3:18-CV-00491, 2022 WL 58399, at *22 n. 50 (M.D. Tenn. Jan. 5, 2022) (quoting *Qualls v. Regents of the Univ. of California*, No. 113CV00649LJOSMS, 2015 WL 6951757, at *3 (E.D. Cal. Nov. 10, 2015) (noting the "complex issues related to the interplay of the summary judgment standard and *McDonnell Douglas*")).

In determining whether Defendant has met its initial burden of demonstrating preliminarily the lack of a genuine dispute as to Plaintiff's ability to show the causal-connection element of his retaliation claim, the Court keeps in mind the legal requirements of this particular element in an indirect-evidence *prima facie* case of retaliation. To establish this element—a causal connection between the protected act and the plaintiff not being hired—a plaintiff must point to evidence that "the unlawful retaliation would not have occurred but for [his] protected activity." *Wingo v. Michigan Bell Tel. Co.,* 815 F. App'x 43, 46 (6th Cir. 2020) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). To put it another way:

> In order to establish [] a causal connection, a plaintiff must show some type of retaliatory intent. [The plaintiff] therefore had to establish that the true motivation for [the adverse employment action(s)] were not for the reasons given, but were instead based on the fact that he [engaged in protected conduct].

*Tennial v. United Parcel Serv., Inc*., 840 F.3d 292, 308 (6th Cir. 2016).

It is one thing to say that a plaintiff must do this to establish a causal connection, but it is quite another to say that a plaintiff is required to establish a causal connection in the first place. Of course, a plaintiff relying on an indirect-evidence theory at trial would indeed have to establish a causal connection. But here, of course, the case is not yet at the trial stage, but rather at the summary-judgment stage. And it is important to remember that a plaintiff actually is not required to establish a genuine issue as to the existence of *any* material fact—including the existence of the causal connection required as the fourth element of an indirect-evidence *prima facie* case of discrimination—[13]in response to a defendant's motion for summary judgment, unless and until the defendant-movant has met its initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute regarding that material fact. *See Pittman,* 901 F.3d at 627-28. If

---

[13] This fact certainly is material where, as here, the plaintiff relies on an indirect-evidence theory of retaliation.

the defendant-movant does not shift the burden, the plaintiff need not establish anything at all, including the existence of a genuine issue of material fact, and it simply does not matter what the plaintiff does or does not establish. This reality not only is in line with Rule 56 and binding precedent interpreting it, but also makes perfect sense because in our system (and under the Seventh Amendment), a plaintiff's right to a jury trial is not to be taken away lightly; it certainly cannot be taken away on the grounds that the plaintiff has not shown adequate evidentiary support for his claims *before trial*, unless and until the defendant has done its part to affirmatively show why the plaintiff show be required to make such a showing in the first place.

That leads to an observation specific to the summary-judgment context as it relates to retaliation claims in particular. "The Sixth Circuit has held that the causal link can be inferred at the summary judgment stage when the adverse employment action and the protected conduct occur close in time," or, in other words, when there is demonstrated temporal proximity. *Benitez*, 2022 WL 58399, at *67. However, this usually requires that the adverse employment action happened "very close in time" to the protected conduct. *Id.* at 68. So when some time has elapsed between the two events, "temporal proximity alone is generally not enough to establish the prima facie element of causation."[14] *Wingo*, 815 F. App'x at *46. Furthermore, the Sixth Circuit has stated that

---

[14] The exact parameters for when temporal proximity can lead to an inference of retaliation is unclear. The Sixth Circuit has previously explained,

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

> The reason for this distinction is simple: if an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate

"'an intervening legitimate reason' to take an adverse employment action 'dispels an inference of retaliation based on temporal proximity.'" *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 628 (6th Cir. 2013) (quoting *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012)); *see Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 450 (6th Cir. 2020) (finding that a plaintiff failed to show a causal connection between protected conduct and her ultimate termination, even though there was temporal proximity, because there were "intervening cause[s] justifying" the termination).

Here, it appears that Defendant has conceded that there is temporal proximity between Plaintiff's protected conduct and Defendant's adverse employment action of rejecting his application. (Doc. No. 33 at 10). However, Defendant has offered up three "intervening legitimate reasons," which (according to Defendant) explain why Plaintiff was not hired and (again, according to Defendant) sever the inference of retaliation based on temporal proximity. As with Plaintiff's claim of discrimination, in connection with Plaintiff's claim of retaliation, Defendant has not offered evidence suggesting that any of the three reasons actually was the purported reasons for Plaintiff's rejection *at the time* the decision was made to reject him. However, in the Court's review of cases, it does not appear that such evidence is required to show "an intervening legitimate reason [for] an adverse employment action [that effectively] dispels an inference of retaliation based on temporal proximity," *Kuhn*, 709 F.3d at 628 (internal quotation marks omitted), that otherwise would be sufficient to establish the fourth element of an indirect-evidence *prima facie*

_____

the retaliation. Thus, employers who retaliate swiftly and immediately upon learning of protected activity would ironically have a stronger defense than those who delay in taking adverse retaliatory action.

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (internal citation omitted). However, as this Court has previously noted, given the subjectivity inherent in the notion of temporal "close[ness]," and the terms "some time" and "very close in time," the devil is in the details as to when a timeframe is sufficiently short to support an inference of causation. *See Benitez*, 2022 WL 58399, at *68.

case.[15] Rather, the Court concludes that for the purpose of rebutting ("dispelling") an inference of causation based on temporal proximity—it is sufficient for a defendant to show evidence of "intervening" circumstances that objectively *would have* provided a legitimate (non-retaliatory) justification for the adverse employment action even if a defendant has no evidence that defendant did actually or even purportedly rely on such justification at the time the action was taken. This is because, on balance, Sixth Circuit cases tend to speak in terms of applicable circumstances that *would* be sufficient to objectively justify (or "cause") the adverse employment action, without referring specifically to whether those circumstances *actually* were invoked by the defendant at the time in question as the justification for the action. *See e.g., Kenney*, 965 F.3d 443, at 449-50 ("As developed for summary judgment, the record here reflects at least two intervening causes: the complaints filed against Kenney and the documented instances of Aspen employees leaving due to her management style. Either one would qualify as an intervening cause justifying Kenney's termination. Kenney's retaliation claim based upon her complaints over Aspen's hiring practices thus fails on this ground as well."); *Wasek*, 632 F. 3d at 472 ("The timeline of events in this case extinguishes any inference based on temporal proximity. Wasek's decision to leave the worksite was an intervening event."); *Jones v. Vilsack*, 861 F. App'x 58, 62 (6th Cir. 2021) (holding that the record showed there was a "intervening, legitimate reason" for the adverse employment action at issue in the case); *Lisan v. Wilkie*, 835 F. App'x 831 (6th Cir. 2020); *Wingo*, 815 F. App'x at 47.

---

[15] As indicated above but repeated here for necessary emphasis, this reflects a much different approach than the one utilized at the second step of *McDonnell Douglas*. The Court does not pause here to opine on whether the approach should be different. Instead, the Court merely notes that it concludes that the approach indeed is different and that the difference well may be justifiable, given the (i) different roles played by steps one and two in the overall analysis of an indirect-evidence theory of employment discrimination; and (ii) the fact that on a motion for summary judgment, step two of *McDonnell Douglas* never involves burden-shifting the way step one does.

As Defendant has produced evidence of "intervening causes" other than Plaintiff's participation in protected conduct, that objectively could justify the rejection of Plaintiff's application for employment, the Court finds that Defendant has successfully negated any inference of causation based on temporal proximity. As Plaintiff's Complaint makes no mention of any other evidence showing causation between his protected conduct and Defendant's adverse employment action, the Court finds that Defendant's dispelling an inference of causation based on temporal proximity sufficed to satisfy Defendant's initial burden of demonstrating that Plaintiff cannot make a *prima facie* showing that there was a causal connection between his protected act and the Defendant's decision to not hire him.

The burden thus shifts to Plaintiff to make a *prima facie* showing as to the causal-connection element, but "[t]he burden of proof at the [indirect-evidence] *prima facie* stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). This can take the form of "evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights." *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

In an effort to meet his burden, Plaintiff points to a note appended to his online application—presumably placed there by someone employed with Defendant, though the identity is not clearly established. (Doc. No. 36-1 at 3). The note reads "talk to Dr. Casebolt or Jeanine

before approval – articles in The L-C."[16] (*Id.*). Plaintiff then states that the articles in the L-C "clearly show Plaintiff as a[n African American] male." The evidence tends to show, at most, that decisionmakers with Defendant would have known that Plaintiff was African American. Whatever value such evidence might have in supporting Plaintiff's claim of racial discrimination, it is of no value in supporting his claim of *retaliation*. More specifically, it is of no value countering Defendant's challenge to the causal-connection element of Plaintiff's indirect-evidence *prima facie* case of retaliation, because Defendant (allegedly) knowing that Plaintiff is African American does not suggest any causation between Plaintiff engaging in *protected conduct* and Plaintiff being rejected as an applicant for prospective employment positions with Defendant. Additionally, the L-C articles make no reference to Plaintiff's EEOC complaint or settlement with his previous employer (Doc. No. 32-3), nor is the Court sure that even if they did, that fact would provide evidence of causal connection (as opposed to evidence of the second element, *i.e.*, that Defendant knew that Plaintiff had undertaken protected activity).

In a purported explanation of the relevance of this evidence, Plaintiff writes, "Redirection to the articles, clearly indicating Plaintiff is a[n African American] male, without further explanation and failure to approve Plaintiff's application removing the possibility of interviews for almost 90 days is retaliatory." (Doc. No. 36 at 14). This conclusory explanation falls flat. The comment appended to Plaintiff's application pointing potential reviewers to the L-C articles that, although disclosing that Plaintiff is African American, make no reference to his protected conduct, is clearly *not* indicative that Defendant retaliated against Plaintiff for his participation in protected

---

[16] Plaintiff received a screenshot of his online application via an anonymous note left in his home mailbox. (Doc. No. 36 at 5). And though Defendant challenges the admissibility of the note as evidence under Fed. R. Evid. Rule 602, Defendant also includes an affidavit from Melissa Izatt, Defendant's former HR Coordinator, acknowledging that the second page of the anonymous note (the one depicting the screenshot of Plaintiff's application) is "from CMCSS' former application system." (Doc. No. 38-1 at 1-2). The Court will therefore consider the screenshot to be undisputed evidence.

conduct. More specifically and even more so to the point, it does not help show the challenged element of Plaintiff's indirect-evidence *prima facie* case of retaliation, *i.e.*, a causal connection between Plaintiff's protected activity and Defendant's failure to hire him. Finally, Plaintiff cites to evidence that he met with Defendant's head of Human Resources in June of 2017 and that "she failed to mention his application had not been marked approved, nor did she request any additional information to remedy the issue." (Doc. No. 36 at 14). The Court fails to see how this evidence has any relevance at all to the question of whether there is a causal connection between Plaintiff's protected activity and Defendant's rejection of his applications.

The Court finds that Plaintiff has failed to cite any evidence that could allow the Court to draw an inference that there was a causal connection between Plaintiff's protected activity and Defendant's adverse employment action. Accordingly, Plaintiff has failed to carry his burden—minimal though it may be—at the first step of *McDonnell Douglas*, which Defendant successfully shifted to him. Thus, Defendant will be granted summary judgment on Plaintiff's retaliation claim.

## CONCLUSION

The Court's decision on each claim is driven by its conclusions (i) that Defendant has produced no evidence that its now-advanced reasons for rejecting Plaintiff's application were in fact purported to be the reason at the time of such rejection; and (ii) that this is fatal to Defendant's argument with respect to Plaintiff's employment-discrimination claim but not Plaintiff's retaliation claim.

For the reasons discussed herein, Defendant's Motion will be **GRANTED in part** and **DENIED in part**. Specifically, Defendant's Motion will be granted as to Plaintiff's claim for Title VII retaliation, and it will be denied as to Plaintiff's claims for Title VII race discrimination.

An appropriate order will be entered.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE